IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HUGO AVILA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:25-cv-00878-O-BP |
| § | |
| TRANSPORT WORKERS UNION § | |
| LOCAL 575, *et al.*, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the request for a temporary restraining order ("TRO") contained in the "Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction" ("the Petition") that Plaintiff Hugo Avila filed on August 14, 2025. ECF No. 10. After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **DENY** Plaintiffs' request for a temporary restraining order. ECF No. 10.

**I.     BACKGROUND**

This suit involves a dispute between Hugo Avila and Transport Workers Union Local 575 ("the union") and several union officers in their official capacities. Avila asserts that the union is liable for violating The Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") in connection with a proposed bylaw amendment, subsequent retaliation, failure to allow copying of union documents, limiting agenda time at meetings for member business, and permitting officers to use union funds to pay for their legal defense in this case. ECF Nos. 10, 19, 26.

On July 24, 2025, Avila sued the union and its president, vice president, treasurer, and recording secretary in their official capacities. ECF No. 3. On August 14, 2025, he filed a Petition requesting a TRO to require the union to post his proposed bylaw amendment, propose the amendment for a vote at the August membership meeting, preserve evidence, permit record inspection and copying, and enjoin retaliation against him. ECF No. 10. On August 18, 2025, Avila filed a protective notice to prohibit the union officer defendants from using union funds to pay for their defense in this case (ECF No. 19), and on August 20, 2025, he requested that the Court enjoin the officers from using union funds for that purpose (ECF No. 26).

## II.    LEGAL STANDARD

A TRO is "extraordinary relief and rarely issued." *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999). A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief," which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638 (N.D. Tex. 2001).

In the Fifth Circuit, the four prerequisites for obtaining preliminary injunctive relief, including a TRO, are:

> (1) [A] substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The party seeking injunctive relief must clearly carry the burden of persuasion on all four *Callaway* prerequisites to prevail. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Given the extraordinary nature of preliminary injunctive relief, "[t]he decision to grant a

preliminary injunction is to be treated as the exception rather than the rule." *Id.* (citing *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Callaway*, 489 F.2d at 576)).

It is also well settled that the issuance of a preliminary injunction freezes the status quo and is intended "to preserve the relative positions of the parties until a trial on the merits can be held." *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997). Preliminary injunctions "seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned." *Id.*

### III. ANALYSIS

#### A. Avila notified Defendants as Fed. R. Civ. P. 65(b)(1) requires.

The Federal Rules of Civil Procedure govern the issuance of a TRO. A court may enter a TRO with or without notice. The rules only allow for issuance of a TRO without notice if:

> **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)

Here, Avila attested that he notified Defendants of the requested TRO via email on August 14, 2025. *See* ECF No. 12. He also attested that he notified them of the protective notice regarding use of union funds on August 18, 2025. *See* ECF No. 20. Accordingly, it appears that Avila satisfied Rule 65(b)(1)'s notice requirement for the issuance of a TRO.

#### B. Avila's TRO request does not meet the legal requirements.

The Court should deny Avila's request for a TRO because he has not established the four prerequisites that the Fifth Circuit requires.

### 1. Avila shows no substantial likelihood of success on the merits.

#### a. Inspection and copying of records

Avila first contends that the LMRDA grants him the right to inspect, copy, and retain the union's financial and governance records. ECF No. 10 at 1. The LMRDA provides for "the reporting and disclosure of certain financial transactions and administrative practices of labor organizations and employers." 29 U.S.C. § 401 (1959). The law requires a union to "file its constitution and bylaws, as well as periodic reports ("LM Reports") regarding the union's constitution and bylaws and finances, with the Secretary of Labor." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 280-81 (5th Cir. 1993). The union also must

> maintain in its files for five years information which will corroborate the LM Reports, in case verification should be sought by the Secretary of Labor or by members of the union who are able to establish 'just cause' for suspicion that the union's reports to the Secretary are inaccurate or do not jibe with the union's activities.

*Id.* at 281, citing 29 U.S.C. §§ 431(c) and 436.

Section 431(c) of the LMRDA provides union members with an enforceable right to examine the union's records. To state a cognizable claim, a plaintiff must "demonstrate 'just cause.'" *Id.* at 285. This requires showing "only a suspicion that would put a reasonable union member to further inquiry. Wrongdoing need not be shown by a preponderance of the evidence." *Landry v. Sabine Indep. Seamen's Ass'n*, 623 F.2d 347, 349 (5th Cir. 1980) (citing *Fruit and Vegetable Packers and Warehousemen Local 760 v. Morley*, 378 F.2d 738, 744 (9th Cir. 1967)).

When a union member shows 'just cause' under the LMRDA, "there are many cases affirming the union member's right to inspect and photocopy receipts and other union records necessary to verify the accuracy of the union's financial statements". *Fernandez-Montez,* 987 F.2d at 285 (citing *Conley v. United Steelworkers of America,* 549 F.2d 1122 (7th Cir. 1977)). While

the text of § 431(c) does not explicitly provide a right to copy records, courts have found that union members should "be free to make such copies as are reasonably necessary to the conduct of the examination." *Conley,* 549 F.2d at 1125. Avila asserts that the union permitted him to inspect but not copy the relevant records, frustrating his ability to confirm the union's compliance. ECF No. 10 at 3. Upon a finding that the Avila has shown just cause for inspecting union records, the examination would extend to include copying of the records if such copying was reasonably necessary to conduct the examination.

In the context of an inspection to verify LM reports, Avila must show the "circumstances that would put a reasonable union member on notice that further investigation is warranted to assure that the union's LM filings . . . comport with the union's own records of its activities." *Fernandez-Montez,* 987 F.2d at 285. Avila must also "state what he wishes to verify in the LM Reports and how the particular union records he is requesting are expected to assist him in doing so.". *Id.*

Here, Avila argues that he has the right to inspect the union's records under the LMRDA. However, he does not demonstrate a reasonable basis for suspicion of the accuracy of the union's reports because he does not plead facts that would put a reasonable union member on notice that further investigation is warranted. Additionally, Avila does not identify what information he wishes to verify within the union reports, and how the records he has requested would assist him in this confirmation. Because Avila has not shown just cause for his request for records, he is not substantially likely to succeed on the merits of a claim under the LMRDA.

      **b.    Posting of the proposed bylaw amendment and proposing the amendment for a vote**

Title I of the LMRDA provides that each member of a labor organization "shall have equal rights and privileges" to nominate candidates, vote in elections, and participate and vote in

meetings, subject to reasonable rules and regulations of the organization. 29 U.S.C. § 411. The section "is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline" *Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 536-37, (1984). If a labor organization infringes on a member's rights secured by this provision, the member may seek a remedy by bringing a civil action in federal district court. *Id.* (citing 29 U.S.C. § 412).

However, Title I protections "forbi[d] only unequal treatment as between members of a union" and thus does not apply when a union treats *all* members unfairly or improperly. *Alexander v. Int'l Union of Operating Eng'rs, AFL-CIO*, 624 F.2d 1235, 1240 (5th Cir. 1980). For example, a rule that prohibits all members from voting on revised bylaws does not violate Title I because the denial of the right to vote affected each member equally. *Bowers v. Pipe Fitters Loc. Union*, No. CIV.A.4:09-CV-0878, 2010 WL 2303341, at *5 (S.D. Tex. June 7, 2010). In addition, rules that merely "circumscribe a member's ability to propose amendments to bylaws" also do not run afoul of Title I of the LMRDA because "[n]othing in the statute sets out any requirements with respect to the amendment of bylaws." *Id.*

Avila alleges that the union's failure to post his proposed bylaw amendment for fifteen days and subsequent failure to present the proposed amendment for a final vote constitutes a violation of Title I of the LMRDA and the Union's bylaws. However, he does not contend that these actions were discriminatory or show whether the union acted exclusively as to him or to all members. Because Avila has not provided pleaded facts to show a violation of Title I of the LMRDA, he is not substantially likely to succeed on the merits of this part of his claim.

### c. Limited agenda access and floor time

Avila claims that the union limited meeting time for "new business" to two minutes of "open floor" time rather than reserving a section of the agenda to discuss such content. He states that this limitation burdened the members' equal rights to participate. As discussed, Title I of the LMRDA only protects the equal rights and privileges of members with respect to other members of the organization, not when actions apply to all members equally. *See Alexander,* 624 F.2d at 1240. Avila did not show that the union applied the limited agenda access and floor time rule unequally to Avila as compared with other members. Instead, he claims that the rule burdened all members' ability to participate. Title I of the LMRDA does not support such a claim because the union's policy did not burden Avila's equal right to participate. As a result, Avila is not substantially likely to succeed on the merits of this part of his claim.

### d. Retaliation

Avila asserts that following his requests for transparency through inspection of records and his proposal of a bylaw amendment, the Union retaliated against him by delivering a "bad standing notice" at a July 2025 membership meeting. Avila thereafter made the necessary payment, and the union permitted him to enter and speak at the meeting. Avila argues that delivery of such a notice during a membership meeting constituted retaliation because it was irregular and delivered with the intent to exclude him from engaging in protected activities.

Section 529 of the LMRDA makes it unlawful for a union to "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled" under the Act. 29 U.S.C. § 529. The provision provides for civil enforcement in a federal district court. *Id.* The union's delivery of a bad standing notice likely does not amount to a "fine or act of discipline" that the LMRDA contemplates. Even so, it is unclear that the union delivered the notice to fine or

7

discipline Avila "*for* exercising" his LMRDA protected rights. *Id.* (emphasis added). While the timing of the union's delivery of the bad standing notice is suspicious, Avila does not plead facts to show that the delivery of the notice constituted unlawful retaliation in violation of § 529. As a result, Avila is not substantially likely to succeed on the merits of this part of his claim.

### e. Using union funds for officers' defense

Avila asserts that the LMRDA prohibits the Defendant officers from using union funds to defend themselves in the present litigation. LMRDA § 501 outlines the fiduciary responsibilities of union officers and supports Avila's contention. Section 501(a) requires officers to act in the organization's best interest, refrain from dealing with the organization as an adverse party, and account for any profit received in their organizational capacity. When a member alleges a violation of § 501(a) and the union fails to bring an action against the officer despite a member's request to do so, the members may enforce the LMRDA's provisions for fiduciary duties. 29 U.S.C. §501(b).

In the context of an officer's violation of § 501, the Fifth Circuit has noted that the LMRDA prohibits use of "union counsel and funds to defend officers charged with breach of fiduciary duty". *Ray v. Young*, 753 F.2d 386, 390 (5th Cir. 1985) (citing *Kerr v. Shanks*, 466 F.2d 1271, 1277 (9th Cir. 1972)). Because "[t]he real beneficiaries of a successful § 501 action are the union and its entire membership," allowing payment of the charged officers' legal costs by the union would effectively frustrate the Act's purpose. *Kerr*, 466 F.2d at 1277, (citing *Highway Truck Drivers & Helpers Local 107 of Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Cohen*, 215 F. Supp. 938, 941 (E.D. Pa. 1963), aff'd, 334 F.2d 378 (3d Cir. 1964)). Other circuits have applied this restriction using a "conflict of interests" approach. *See Urichuck v. Clark*, 689 F.2d 40, 42 (3d Cir. 1982) (explaining that a union may not provide counsel

for an officer when the interests of the union and its officers in the outcome of the case may be adverse).

However, in both *Kerr* and *Urichuck*, the courts limited this prohibition to alleged violations of § 501. The prohibition against using union funds is especially important in this context because when an officer has potentially breached a fiduciary duty to the union, it is likely that the officer's and union's interests diverge. Also, because the union itself receives recovery against the officer for a successful § 501 action, paying for the officer's legal defense is especially problematic.

Here, Avila asserts the union's actions violated Title I and § 431(c) of the LMRDA. He does not assert a § 501 violation for breach of fiduciary duty, other than as a basis to claim that the union cannot pay the officers' legal expenses here. If successful, Avila would recover individually from this action, not the union. This eliminates an important justification for the prohibition in *Kerr* and *Urichuck* and significantly distinguishes this case. Although Avila ultimately may prevail on this case, the undersigned cannot conclude that he is substantially likely to succeed on the merits of this part of his claim.

### f.     Evidence preservation

Finally, Avila argues that the Court should order the Defendants to preserve all evidence relating to the present cause of action. He cites no statutory support for this request, and the LMRDA contains no evidence preservation requirement. Therefore, Avila is not substantially likely to succeed on the merits of this part of his claim.

### 2.     There is no clear showing of irreparable harm.

To satisfy the second element of the preliminary injunction standard, Avila must show "that if the district court denied the grant of a preliminary injunction, irreparable harm would

result." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Injuries are irreparable only when they "cannot be undone through monetary remedies." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008).

Avila claims that monetary damages will not undo the harm the union causes here because Avila will lose the chance to have a timely vote on his proposed amendment that over five hundred other union members' support. He emphasizes that continued retaliation will discourage member participation in meetings and future requests for transparency, which monetary damages also cannot remedy. Finally, he notes that denied access to union records prevents effective inspection during a finite audit period and risks the irretrievable dissipation of evidence.

Even if these arguments support a showing of irreparable harm, the Court still should find that entry of a TRO is inappropriate. Irreparable harm alone is insufficient to support equitable relief because "the likelihood of success is the 'main bearing wall' of the test," and here, Avila has not met this requirement for his claims. *Belknap v. Bank of Am., N.A.*, No. CIV.A. G-12-198, 2012 WL 3150271, at *4 (S.D. Tex. Aug. 1, 2012).

### 3. The balance of harms does not favor Avila.

The third element requires Avila to show that the threatened injury outweighs any harm the injunction might cause. *See Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 23 (2008). Avila contends that the harm he faces is significant, and the burden on the Defendants is minimal. But he does not support this conclusory statement with facts. He does not show that his inability to copy records and post and propose his amendment at the August membership meeting harms him more than the burden the union would face in complying with his demands on an expedited basis. Thus, Avila does not meet his burden on the third element of the preliminary injunction

standard. *See Thompson v. Hughes, Watters & Askanase, LLP*, No. 3:13-cv-429-G-BH, 2013 WL 705123, at *3 (N.D. Tex. Jan. 31, 2013), *rec. adopted* 2013 WL 705883 (N.D. Tex. Feb. 27, 2013).

### 4. Public policy does not support issuance of a TRO.

The final element requires a showing that granting the injunction does not disserve the public interest. *Winter*, 555 U.S. at 20. Courts are more likely to both grant and withhold injunctive relief in furtherance of the public interest than when merely private interests are involved. *Yakus v. United States*, 321 U.S. 414, 441 (1944). Here, Avila merely asserts in conclusory fashion that Congress enacted the LMRDA to promote rights of union members, and therefore equitable relief in this case is in the public interest. Such an unsupported conclusory assertion does not provide a sufficient basis to find that a TRO in this case would serve the public interest. Therefore, Avila has not met his burden on the fourth element of the preliminary injunction standard.

## IV.    CONCLUSION

Because Avila has not met the legal requirements for issuance, the undersigned **RECOMMENDS** that Chief Judge O'Connor **DENY** his request for a Temporary Restraining Order. ECF No. 10.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), superseded by statute 28 U.S.C. § 636(b)(1) (extending the deadline to file objections from ten to fourteen days).

**SIGNED** on August 25, 2025.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE